**MENEFEE CRUSHED STONE CO., INC., Plaintiff–Appellee,**

v.

**Dudley W. TAYLOR, Commissioner of Revenue for the State of Tennessee and Successor to Kathryn B. Celauro and Donald W. Jackson, and W.J. Michael Cody, Attorney General and Reporter for the State of Tennessee, Defendants–Appellants.**

Court of Appeals of Tennessee, Middle Section, at Nashville.

June 29, 1988.

Application for Permission to Appeal Denied by Supreme Court Oct. 31, 1988.

W.W. Berry, William W. Berry, Jr., Bass, Berry & Sims, Nashville, for plaintiff-appellee.

W.J. Michael Cody, Atty. Gen. and Reporter, Charles L. Lewis, Deputy Atty. Gen., William E. Young, Asst. Atty. Gen., Nashville, for defendants-appellants.

OPINION

LEWIS, Judge.

This is an appeal by the defendant, Dudley W. Taylor, Commissioner of Revenue for the State of Tennessee, from the Chancellor's judgment ordering the return of severance taxes paid under protest by plaintiff after finding the Commissioner could not impose a severance tax on plaintiff for limestone quarried by plaintiff before July 8, 1985. The Chancellor found that the chapter authorizing the tax, Chapter 410, Public Acts of 1985, was not effective until 8 July 1985. The Chancellor held that the collection of the tax before the effective date would violate Tenn. Const. Art. I, § 20, which prohibits retrospective laws.

This case commenced when the Commissioner assessed a severance tax against the plaintiff on June 10, 1985, upon minerals

severed from the ground since June 5, 1984.

Plaintiff subsequently paid under protest to the Commissioner the severance tax which was assessed.

Plaintiff filed two complaints with the Tennessee Claims Commission questioning its liability for payment of the severance taxes. The plaintiff subsequently removed both the cases to the Chancery Court for Davidson County, Tennessee, pursuant to the provisions of Tenn.Code Ann. § 67–1–1805.[1]

Both complaints were consolidated for trial pursuant to an order of the Chancery Court for Davidson County. In both complaints, the plaintiff alleged that the severance tax as applied to it was unconstitutional and invalid because (1) both Chapter 953, Public Acts of 1984, which originally imposed a severance tax, and Chapter 410, Public Acts of 1985, which attempted to cure certain constitutional defects in Chapter 953, were invalid delegations of legislative power in contravention of Tenn. Const. Art. II, § 3; (2) Resolution 84–334, adopted by the Metropolitan Council of the Metropolitan Government of Nashville and Davidson County, Tennessee, pursuant to provisions of Chapter 953, Pub.Acts of 1984, was an unconstitutional exercise of state legislative power by the Metropolitan Council since it was based upon an unconstitutional delegation of legislative power and, thus, was invalid and ineffective to authorize an imposition of any severance tax in Davidson County, Tennessee; (3) Chapter 410 of the 1985 Public Acts was an attempt to tax the exercise of a privilege after the privilege had been exercised, and therefore violated both the provisions of Article 1, § 20 of the Constitution of the State of Tennessee, which provides "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made" and § 1 of the Fourteenth Amendment to the Constitution of the United States by

depriving the plaintiff of its property without due process of law; and (4) the attempted retroactive application of the severance tax by Chapter 410, Public Acts of 1985, was ineffective because that Act lacked the wording which is constitutionally required for setting extraordinary effective dates.

The defendants answered the complaints, denying that the severance tax assessed against the plaintiff was improperly collected.

Following an evidentiary hearing, the Chancellor filed his Memorandum Opinion and found that (1) Chapter 410 of the 1985 Public Acts was a constitutional delegation of legislative power; (2) the Resolution 84–334 of the Metropolitan Council complied with requirements of Tenn.Code Ann. § 67–7–212 that the severance tax be approved by resolution of the local legislative body; (3) the effective date of Chapter 410, Public Acts of 1985, was July 8, 1985; and (4) the commissioner could not impose a severance tax on limestone quarried by the plaintiff before July 8, 1985, since this would violate the prohibition against retrospective laws contained in Tenn. Const. Art. I, § 20. Thereafter, the Chancellor entered judgment which incorporated his Memorandum Opinion. The judgment required the commissioner to refund all taxes paid by the plaintiff under protest on limestone quarried before July 8, 1985.

On June 5, 1984, the Governor signed Chapter 953, Public Acts of 1984, which authorized counties to levy a severance tax. Section 1 of Chapter 953 provided that "[a]ny county legislative body, by resolution is authorized to levy a tax on all sand, gravel, sandstone, chert and limestone severed from the ground within its jurisdiction." Section 8 of Chapter 953 provided that the act "shall not become effective for the imposition of the tax within any county in this state unless it is approved by a

---

1. T.C.A. § 67–1–1805 provides in part that:
   Any claim for refund of taxes collected or administered by the commissioner of revenue pending before the claims commission on April 15, 1986, shall be removed to the appropriate chancery court on notice of removal filed by the

petitioner therein with the clerk of the claims commission and the clerk and master of the chancery court, within ninety (90) days from April 15, 1986, with a copy mailed or delivered to the attorney general.

two-thirds (⅔) vote of the county legislative body" and that "[s]uch county legislative body shall approve or disapprove this act within one hundred twenty (120) days of the effective date of this act for ratification purposes." The provisions of Chapter 953 were subsequently codified at Tenn.Code Ann. §§ 67-7-201—67-7-211.

The Metropolitan Council of the Metropolitan Government of Nashville and Davidson County, pursuant to Chapter 953, adopted Resolution 84-334 on August 21, 1984, and certified the Resolution on August 27, 1984. Resolution 84-334 provided that the Council approve Chapter 953 and specifically stated: "tax on any and all sand, gravel, sandstone, chert, and limestone as they are or may be defined by said Public Chapter 953 as the same may be amended, is hereby levied." The Resolution set the tax rate at fifteen ($.15) cents per ton. Resolution 84-334 became effective on August 21, 1984.

On October 1, 1984, the Tennessee State Attorney General issued an opinion which concluded that Chapter 953, Public Acts of 1984, was constitutionally suspect. The Attorney General reiterated this conclusion in an opinion on March 13, 1985, stating that "it is the opinion of this Office that Chap. 953 is unconstitutional." According to this opinion, Chapter 953 violated the fundamental constitutional principal that "the power conferred upon the legislature to make laws cannot be delegated by that department to any other body or authority." The Attorney General noted that a true local option would not violate this principal but reasoned that Chapter 953 was not a true local option since if no county legislative body approved it within 120 days then the legislative enactment would never go into effect. The Attorney General opined that under these circumstances the commissioner of revenue would be justified in declining to administer the provisions of Chapter 953.

On May 28, 1985, in order to correct any perceived defects in Chapter 953, the Governor signed Chapter 410 of the Public Acts of 1985. Chapter 410 amended several provisions of Tenn.Code Ann. §§ 67-7-

201—67-1-211 relative to the imposition of the tax on minerals severed from the ground. Specifically, § 3 of Chapter 410 repeals Tenn.Code Ann. § 67-7-210. Section 4 of Chapter 410 added the following new provision:

(a) The tax authorized by this part shall be levied pursuant to the provisions of this part in any county upon the adoption of a resolution by two-thirds (⅔) vote of the county legislative body of such county. The presiding officer of the county legislative body shall certify a copy of the resolution to the secretary of state and the commissioner of the department of revenue.

(b) In addition, no tax shall be collected by the department of revenue pursuant to such county legislative action until the first day of a month occurring at least thirty (30) days after the receipt of a certified copy of such action by the department of revenue.

(c) Any county legislative body that has by private act enacted prior to June 5, 1984, levied a tax on the severance of sand, gravel, sandstone, chert or limestone may continue such tax at a rate not to exceed the rate established in §§ 67-7-201—67-7-211, and such private act shall remain in force and effect in such county for all other purposes; provided, however, that any adjustment required by §§ 67-7-201—67-7-211, in the rate effective in such county shall take effect on the first day of the month following June 5, 1985.

These provisions have been codified at Tenn.Code Ann. § 67-7-212.

Section 5 of Chapter 410 re-enacted the text of Tenn.Code Ann. Title 67, Chapter 7, Part II, excluding § 67-7-210 and incorporated this text in Chapter 410 as a part of that act. Furthermore, § 6 of Chapter 410 expressly stated that "[a] resolution adopted by any county legislative body in conformance with Section 3 on or after June 5, 1984, shall be effective for the collection of the tax authorized herein." And § 8 provided in part that the "provisions of Sections 2 through 5 of this Act shall be retroactive to June 5, 1984, so as to

authorize levy of the tax herein from that date, the public welfare requiring it."

The plaintiff is engaged in the business of quarrying and selling limestone from a quarry located in Davidson County, Tennessee. The plaintiff received a memorandum dated June 10, 1985, from Jerry Davis, Director of the Miscellaneous Tax Division of the Department of Revenue of Tennessee. The memo advised that Chapter 410 of the Public Acts of 1985, had been enacted and authorized any county legislative body to levy a tax on limestone and other type of rock which were severed from the ground. The memo further stated that Chapter 410 was retroactive to June 5, 1984, making any resolution adopted by two-thirds vote of the county legislative body on or after June 5, 1984, effective for the collection of the tax. The memorandum advised the plaintiff that the mineral severance tax was due and payable to the State of Tennessee by the plaintiff upon minerals specified in the memorandum which were severed from the ground since June 5, 1984.

The plaintiff paid the severance taxes due under protest and initiated these cases to recover the taxes paid under protest.

The Commissioner's first issue is whether "[t]he Chancery Court incorrectly found that the provisions of Chapter 410 of the 1985 Public Acts were only effective on or after July 8, 1985."

Both plaintiff and the Commissioner agree that Chapter 410, Public Acts of 1985 did not become effective until July 8, 1985, forty days after its passage.[2]

However, the Commissioner argues that §§ 2 through 5 of Chapter 410 are retroactive from July 8, 1985 to June 5, 1984, because of the provision of § 8 which provides in part: "The provisions of Sections 2 through 5 of this Act shall be retroactive to June 5, 1984, so as to authorize levy of tax herein from that date, the public welfare requiring it."

2. Tenn. CONST. Art. II, § 20 provides in pertinent part:
"No law of a general nature shall take effect until forty days after its passage unless the same

■ Provisions of an act will be given retroactive operation if that intent is either plainly expressed or necessarily implied by the act. *Woods v. TRW, Inc.*, 557 S.W.2d 274, 275–76 (Tenn.1977).

While there is no question that the legislature's apparent express intention is that §§ 2 through 5 of Chapter 410 are to be retroactive to 5 June 1984, before any provision of the Act can be retroactive, the Act must take effect.

■ Since § 8 of Chapter 410 lacks the constitutionally required wording for setting an extraordinary effective date, the repeal of § 8 of the Public Acts of 1984 and the enactment of §§ 2 through 5 of the Public Acts of 1985 take effect in accordance with Tenn. Const. Art. II, § 20. Sections 2 through 5 cannot take effect prior to the effective date of the act. The act took effect July 8, 1985, and not before.

■ The Commissioner's second issue is that the Chancery Court incorrectly held that the imposition of a severance tax on limestone quarried before 8 July 1985, pursuant to § 4 of Chapter 410 of the 1985 Public Acts (presently codified at T.C.A. 67–7–212), violates the prohibition against retrospective laws contained in Tenn. Const. Art. I, § 20.

Article 1, § 20 of the Tennessee Constitution provides: "[t]hat no retrospective law, or law impairing the obligations of contracts, shall be made."

Retrospective laws are generally defined, from a legal standpoint, as those which take away or impair vested rights acquired under existing laws or create a new obligation, impose a new duty, or attach a new disability in respect of transactions or considerations already passed.

*Morris v. Gross*, 572 S.W.2d 902, 907 (Tenn.1978) (citations omitted).

The Commissioner contends that to authorize a levy of the tax retroactive to June 5, 1984, is not prohibited by Tenn. Const.

or the caption thereof shall state that the public welfare requires that it should take effect sooner."

Art. I, § 20 "since the provisions of Chapter 410 were only intended by the legislature to cure or remedy any perceived defect in Chapter 953."

The Attorney General had, in response to an inquiry by the Commissioner, given his opinion that Chapter 953, Public Acts of 1984, was unconstitutional. Based upon the Attorney General's opinion, the Commissioner informed plaintiff and others of the Attorney General's opinion and ceased collecting the severance tax during March, April, and May of 1985.

Plaintiff, in each of the consolidated complaints, alleged that Chapter 953, Public Acts of 1984, was unconstitutional. The Chancellor did not pass upon this issue since the Commissioner, based upon the Attorney General's opinion, did not contest it.

We have reviewed Chapter 953 and, after our review, agree with the Attorney General "that Chapter 953 is unconstitutional."

Section 13 of Chapter 953 provided as follows: "For the purpose of approving or rejecting the provisions of this act, it shall be effective upon becoming a law, the public welfare requiring it. For all other purposes, it shall become effective upon being approved as provided in Section 8."

Section 8 provided in pertinent part as follows:

> This act shall not become effective for the imposition of a tax within any county in this state unless it is approved by a two-thirds (⅔) vote of the county legislative body. Such county legislative body shall approve or disapprove this act within one hundred twenty (120) days of the effective date of this act for ratification purposes.

The power to make laws is conferred upon the legislative branch of government and that power "cannot be delegated by that department to any other body or authority." *McQueen v. McCanless*, 182 Tenn. 453, 460, 187 S.W.2d 630, 632 (1945). "[T]he Legislature cannot delegate the exercise of its discretion as to what the law shall be...." *Department of Pub. Wel-*

*fare v. National Help "U" Ass'n.*, 197 Tenn. 8, 12, 270 S.W.2d 337, 339 (1954).

When §§ 8 and 13 of Chapter 953 are read together it is readily apparent that the law was not complete when the legislature determined that it was through with it. If no county approved Chapter 953 by a two-thirds vote of the county legislative body within a 120–day period, Chapter 953 would never go into effect. The passage of Chapter 953 by the legislature would amount to no more than an exercise in futility. Whether a general law becomes effective cannot be placed in the hands of counties or municipalities. To do so allows counties or municipalities to determine what the general law will be. Only the legislature can say what the general law will be.

Chapter 953, Public Acts of 1984, was an unconstitutional delegation of legislative authority. The legislature exceeded its authority in the passage of Chapter 953. So far as the legislature's authority is exceeded, the act is void. *Nelson v. Allen*, 9 Tenn. (1 Yer.) 360, 379 (1830). Enactments in contravention of the constitution by the legislature are null and void. *Bass's Lessee v. Dinwiddie*, 3 Tenn. (Cooke) 130, 132 (1812).

We are of the opinion that under all the facts and circumstances, Chapter 410, Public Acts of 1985, was a completely new act and could not retroactively tax transactions which had already been performed prior to its effective date, July 8, 1985, without violating Tenn. Const. Art. I, § 20.

The Commissioner's argument that the prohibition against retrospective laws does not generally forbid remedial legislation enacted to cure defects in prior law and that Chapter 410, Public Acts of 1985 was simply remedial legislation to cure the defects in Chapter 953, Public Acts of 1985, is without foundation under the circumstances here.

50 Am.Jur. *Statutes*, § 16 [3] says, "Another common use of the term 'remedial statute' is to distinguish it from a statute conferring a substantive right and to ap-

---

**3.** § 16 should read § 15.

ply it to acts relating to the remedy, to rules of practice or courses of procedure, or to the means employed to enforce a right or address [*sic*] an injury."

*Burton v. Borden Foods Co.*, 494 S.W.2d 775, 776 (Tenn.1972).

In *Anderson v. Memphis Housing Authority*, 534 S.W.2d 125 (Tenn.App.1975), this Court held that the trial judge erred in applying a statute which increased the amount of damages to which the party was entitled in a condemnation proceeding on the ground that it was an unconstitutional retrospective application of the statute. Judge Nearn, writing for the Court, stated:

The fact that a statute is retrospective in application does not automatically render it unconstitutional and void. It is when a statute creates a new right or takes away a vested right or impairs contractual obligations that its retrospective application is constitutionally forbidden. If the statute does none of the foregoing, but is only procedurally remedial in nature, retrospective application is constitutionally permissible. In point of fact, the retrospective application of remedial statutes is not only constitutionally permissible, but such statutes are generally to be construed in favor of retrospective application when possible.

Since the Amendment in question did not come into being until after suit was filed, there can be no doubt that it has been retrospectively applied.

Therefore, whether or not the Trial Judge was correct in his retrospective application of the 1972 Amendment depends upon whether or not the statute is remedial in nature. We hold that it is not remedial in nature and therefore, not permissibly retrospective in its application.

... The 1972 Amendment clearly allows the owner in an inverse condemnation matter recovery for greater and a new and different measure of damages than was previously allowed, viz., attorney fees etc.

In both the *Dowlen* [*Dowlen v. Fitch*, 196 Tenn. 206, 264 S.W.2d 824 (1954)] and *Wynne's Lessee* [*Wynne's Lessee v. Wynne*, 32 Tenn. (2 Swan) 405 (1852)] cases, supra, the Court held that statutes which create new or take away vested rights and obligations cannot be retrospectively applied.

*Id.* at 127–28 (citations omitted).

In the instant case, the Chancellor correctly held that:

Taxing the plaintiff before the effective date of the statute would amount to taxing an act after the act had been performed. This amounts to imposing a new duty or creating a new obligation in respect to an act already passed.

This would violate the prohibition against retrospective laws contained in Article 1, § 20 of the Tennessee Constitution.

We have considered each of the cases cited by the Commissioner and find that they are clearly distinguishable.

The judgment of the Chancellor is affirmed with costs assessed to the Defendant Commissioner and the cause remanded to the Chancery Court for the collection of costs and further necessary proceedings.

TODD, P.J., and CANTRELL, J., concur.